# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,             )
                                )
v.                              )
                                )   No. 11-20124-CM
DOUGLAS M. SCHULER,             )
                                )
        Defendant.             )
                                )

## MEMORANDUM AND ORDER

On October 27, 2010, M.V. disclosed to her high school social worker that defendant (her stepfather) had been making unwanted sexual advances toward her. She stated that defendant had been writing her typewritten letters telling her things that "made her feel uncomfortable." Also, he would allow M.V.'s boyfriend to come over when her mother was not home, in violation of the rules her mother had established. In exchange for defendant allowing the boyfriend to visit, defendant required M.V. to allow defendant to rub her back and legs. M.V. remained clothed during these sessions: defendant allegedly insisted M.V. change into a sports bra and shorts for the back rubs. M.V. stated that on one occasion defendant rubbed her back and shoulders for fifteen minutes, and when M.V. stood up to try to end the encounter, she noted that she had "stuff" on her shorts, and she knew it had come from defendant.

As a result of this disclosure, the police were called to Lansing High School. Mrs. Schuler was also called to the school, and M.V. repeated her story. Mrs. Schuler then went home, collected M.V.'s shorts and defendant's Acer laptop computer, and brought them to the school. She provided these items to Officer Crawford, explaining that she believed this was the laptop used by the defendant to write the letters. Both M.V. and her mother gave written statements, and Officer

Crawford requested, and received, a written consent to search the laptop from Mrs. Schuler.

Officers subsequently applied for, and were granted, a search warrant for the Acer laptop computer. (The affidavit's reference to the serial number for the computer was incorrect – it contained two typographical errors. Those errors were later corrected, but the actual forensic search occurred before the correction.)

A search was conducted of the contents of the Acer laptop. Although the typewritten letters were not discovered, agents did discover a number of other materials, which are the subject of defendant's motion in limine (Doc. 11), and some of which form the basis of the charged offense.

**Arguments For and Against Suppression**

Defendant makes several arguments for the suppression of the evidence obtained in this case. First, the search of the Acer laptop violated the Fourth Amendment because Mrs. Schuler did not have actual authority to consent to its search. Second, no apparent authority existed for the search of the computer, based upon the circumstances in which Mrs. Schuler turned over the laptop. And third, the affidavit for the search warrant provided insufficient probable cause to search for items of child pornography. Finally, defendant argues that even if the consent was valid, a separate warrant was required for examination of the computer's contents.

The government concedes the application for search warrant lacked a sufficient probable cause statement to justify the search of the Acer laptop for child pornography. However, the government argues that, regardless of the warrant, Mrs. Schuler had actual and apparent authority to consent to the search of the laptop, and that no additional warrant was necessary.

**Hearing on Motion to Suppress**

At the hearing on defendant's motion to suppress, Mrs. Schuler testified that she received a

call from the school counselor to come to the school and not to tell defendant. After she heard what happened from M.V., she went home and looked through the files on the laptop in an effort to locate the typewritten letters, but could not find them. She testified that the computer was kept in the family's living room. She testified that defendant had purchased the Acer computer for work and took it with him when he traveled out of town for work. But she testified that she knew the password to the computer, and she had access to it and used it occasionally, such as when her computer was not working. She testified that she had probably logged into it less than ten times prior to that day. She also stated that, although defendant was the primary user of the Acer, all the computers were "ours." She likened the arrangement to that of their vehicles: although she and defendant each had their own vehicle, either could drive the other's. When she provided the laptop to Officer Crawford at the school, it was "on" and "unlocked."

Defendant, on the other hand, testified that the Acer laptop was his alone, that Mrs. Schuler did not have permission to use it and did not have authority to consent to its search. He testified that the Acer was his work computer and he works as a government contractor with a security clearance. Therefore, the computer was not for the family's use. He testified that, in fact, he had never provided Mrs. Schuler with the password. He also testified that, at least as of October 27, 2010, the computer was not located in the family room as Mrs. Schuler had indicated. Defendant testified that he had started keeping the computer hidden under his bed because it was "safer."

Officer Crawford testified that he assumed Mrs. Schuler had authority to consent to the search because she was defendant's wife and she brought the computer in with her.

**Analysis**

A third party has actual authority to consent to a search if that third party has either: (1) mutual use of the property by virtue of joint access, or (2) control for most purposes. *See United*

*States v. Sanchez*, 608 F.3d 685, 689 (10th Cir. 2010). A spousal relationship gives rise to a presumption of control. *United States v. Rith*, 164 F.3d 1323, 1330 (10th Cir. 1999).

Even where actual authority to consent to a search is lacking, a third party has apparent authority to consent to a search if the officer has a reasonable—even if erroneous—belief that the third party has (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it. *See United States v. Cos*, 489 F.3d 1115, 1125, 1128 (10th Cir. 2007).

The court heard the testimony of Mrs. Schuler and Officer Crawford. The court also heard the testimony of defendant. The court has reviewed the parties' briefs and the applicable law. The court does not believe that Officer Crawford was presented with an ambiguous situation here, nor was he required to make further inquiry. Mrs. Schuler had retrieved her husband's laptop from their home, had it in her possession, and provided it to officers—on and unlocked—explaining that she believed it was used to write the letters and/or that it contained the letters, although she was not able to find them on it. The computer was in her care, custody, and control when she provided it to officers and consented to their search of it.

It is true that police only *later* learned more facts that would either support or undermine Mrs. Schuler's authority to consent to the search, such as where the laptop was kept; whether Mrs. Schuler had previously been provided a password (or whether any password was actually required); and whether she occasionally used the laptop. However, the critical inquiry is what police knew at the time consent was given. *Sanchez*, 608 F.3d at 689, n.1 (noting that reasonableness of officer's belief that a third party has authority to consent is an objective inquiry, "based on the 'facts available to the officer at the moment,'" quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)); *United States v. Andrus*, 483 F.3d 711, 722 (10th Cir. 2007) (noting that "[a]ny after-acquired factual knowledge that 'might undermine the initial reasonable conclusion of third-party apparent authority [is] generally

-4-

immaterial,'" (quotation omitted)). The court need not resolve contradictions in the hearing testimony because these additional facts are not relevant to the inquiry. The court agrees with the government that, at the time and under the circumstances in which Mrs. Schuler gave consent to search, it was reasonable for Officer Crawford to believe that she had authority to do so.

**Warrant Nevertheless Necessary?**

At the hearing and in the additional briefing permitted by the court, defendant also asserts that, even if the consent was valid, a valid warrant was still required to search the files on the computer. Defendant cites, among others, *United States v. Carey*, 172 F.3d 1268 (10th Cir. 1999) and *United States v. Walser*, 275 F.3d 981 (10th Cir. 2001) in support. The court has reviewed these cases and finds them inapplicable to the circumstances of this case. Mrs. Schuler gave a valid third-party consent to the search of—not merely seizure of— the Acer laptop. That consent was unlimited. The fact that Officer Crawford and Mrs. Schuler both testified that, at the time, they had absolutely no suspicion that any visual depictions of an incriminating nature would be discovered on the computer, is irrelevant. The officers were authorized to search for any evidence that would corroborate M.V.'s statements or which related to the alleged sexual exploitation of a minor. Plaintiff offers no support, and the court can find none, for the proposition that, under the factual circumstances of this case, a warrant was necessary for the search of the particular incriminating files discovered on the laptop.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Doc. 10) is denied.

Dated this <u>8th</u> day of March 2012, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**